IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
FEB 13 2007
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
    DEPUTY CLERK

| | | |
|---|---|---|
| NOVA CONSULTING GROUP, INC., | § § § | |
| Plaintiff, | § § | |
| V. | § | CASE NO. SA-03-CA-305 -FB |
| | § | |
| ENGINEERING CONSULTING SERVICES, LTD., | § § § | |
| | § | |
| Defendant. | § | |

## ORDER ON POST-VERDICT MOTIONS AND JUDGMENT

In Suits at common law, where the value in controversy shall exceed 20 dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of common law. U.S. CONST. amend. VII (The Bill of Rights).

\* \* \* \* \*

Mr. Steve Cummings, Chief Executive Officer and one of the founders of Nova Consulting Group, Inc., plaintiff, believed that Engineering Consulting Services, Ltd. (ECS) acting through its San Antonio agents and employees intentionally raided and destroyed the business of Nova's San Antonio operation. Nova first filed suit in Chicago federal court, no doubt concerned of being hometowned by a San Antonio jury. Subsequently, however, the dispute transferred to federal court in San Antonio, the situs of the genesis of the controversy. After six days of trial, any Nova trepidation was assuaged in the brief 2 hours and 40 minutes it took the jury to answer all questions in favor of Nova, including liability, intentional misconduct and damages.

The jury heard expert testimony of $8.1 million from plaintiff's witness Mr. Kenneth Malek and $931,000 damages from defendant's expert Mr. William Barnard. Having considered the same

and all other evidence in the case, the collective wisdom of the jury awarded about a third of the damages sought by Nova.

The case was presented in an excellent manner by counsel for both ECS and Nova. Good lawyering, however, cannot overcome bad facts. Indeed, if the lawyers had switched sides, the lawyering would have been just as good but the results would have been the same based on the evidence heard and seen by the jury.

Great deference is given to "the wisdom of the jury verdict." Prestenbach v. Rains, 4 F.3d 358, 361 (5th Cir. 1993). In evaluating the evidence, this Court as well as the appellate court uses the "well-known standard articulated in Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc), overruled in part on other grounds by Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir. 1997) (en banc)" which provides:

> [T]he Court should consider all of the evidence–not just that evidence which supports the non-mover's case–but in the light and with all reasonable inferences most favorable to the party opposed to the [Rule 50] motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting [judgment as a matter of law] is proper.

Deffenbaugh-Williams v. Wal-Mart Stores, Inc., 156 F.3d 581, 588 (5th Cir. 1998), vacated by, 169 F.3d 215 (5th Cir. 1999), opinion reinstated on rehearing, 182 F.3d 333 (5th Cir. 1999).

As set forth in a limited summary below, the entire record, including the jury's live, realtime assessment of the demeanor and credibility of the witnesses, is replete with evidence far more than sufficient to support the jury's verdict in favor of Nova. For example:

A. An e-mail from Dennis Hunter to Brett Gitskin, president of ECS Illinois and a member of the Board of Directors of ECS Limited, from which a reasonable juror could find some degree of

antipathy by former Nova employees toward Mr. Cummings and Nova which read in part: "Remember, F___ Steve Cummings." (Expletive edited.) Despite the fact this kind of language violated ECS policy, Mr. Gitskin "elected to ignore it and focus on the business issue and not make a big issue out of it."

B. A quote attributed to Earl McIntosh, after he left Nova to join ECS, made to Steve Tyson, a recruiter/headhunter not affiliated with either party, during a telephone conversation, "Well, he (McIntosh) said – again, he was joking, and said that, you know, he's got the clients and he would have taken the copier machine and the vehicle if he could have gotten away with it." Mr. Tyson stated he was not only surprised that Mr. McIntosh had left Nova but "I was surprised that he was so blunt about talking about it." Mr. Tyson again mentioned on redirect examination that he was surprised not so much at what was said but the way it was said. When questioned further about that, Mr. Tyson stated, "That it was like a joke and like it was, you know, I was – I have gotten away with something, and –that's basically it."

C. When ECS entered the San Antonio market by and through the efforts of Michael Harwood, its agent and representative, its only asset was the checkbook (or blank check) Mr. Harwood used to hire away Nova's employees. Mr. Harwood testified he started work in San Antonio with "a notepad and a cell phone." He also admitted that ECS's goal was to become the largest consulting firm in San Antonio and the strategy for accomplishing this goal was to take top talent from other engineering firms rather than acquiring those firms. ECS started by hiring Nova's top management layer and then followed with project managers and key technicians. All of these hires were expected to immediately begin entering all of their contact information into the ECS contact database.

D. After Nova filed its first lawsuit against ECS in August of 2002, Brett Gitskin,, responded to an e-mail from Mr. Harwood, who was upset about the suit, by stating ECS would prevail and "[t]hen we will continue to conquer."

E. Mr. Gitskin admitted to the "continue to conquer" e-mail and explained ECS's goal the day it opened in San Antonio was to become the largest firm in San Antonio and that goal did not change. When asked if Nova was to be conquered, Mr. Gitskin responded, "If you are going to be the largest firm in town, you have to beat everybody."

F. Robert Burge acknowledged that the clients he took from Nova to ECS helped to expand ECS's local client base.

G. Mr. McIntosh also admitted using Nova customer contact information to develop business for ECS.

Based on the record and the deferential standard of Boeing Co. v. Shipman, the jury was within proper legal evidentiary bounds to find intent, malice and bad animus on the part of ECS, its agents and employees and exemplary damages of $500,000.00.

While the Court has considered the authorities submitted, all of which can be distinguished in one way or another, Sulzer Carbomedics, Inc. v. Oregon Cardio-Devices, Inc., 257 F.3d 449 (5th Cir. 2001), Neiman-Marcus Group, Inc. v. Dworkin, 919 F.2d 368 (5th Cir. 1990), and University Computing Co. v. Management Science America, Inc., 810 F.2d 1395 (5th Cir. 1987), offer examples of deferring to the jury's verdict and reaching a just and reasonable result in awarding damages. See Sulzer Carbomedics, 257 F.3d at 460 ("Because the district court's judgment of $923,743 in compensatory damages was a 'matter of just and reasonable inference,' we conclude that the district

court did not err in awarding damages in that amount"); Neiman-Marcos Group, 919 F.2d at 372, 374 ("The jury enjoys substantial discretion in awarding damages within the range shown by the evidence."; "We cannot review the jury's exact computations, but must presume that the jury acted properly in reaching its verdict. We decide that the modest award of $790,000 certainly falls within the range of reasonableness established by the evidence."); University Computing, 810 F.2d at 1398 (quoting Southwest Battery Corp. v. Owen, 131 Tex. 423, 115 S.W.2d 1097 (1938), "It is impossible to announce with exact certainty any rule measuring the profits the loss for which recovery may be had.").

Based on the entire record, the Court, on the issue of past economic damages, finds the jury's answer of $1.5 million was supported by testimony, but a picture is worth a thousand words. The exhibit entitled "Impact of ECS's Conduct on Nova San Antonio's Revenues" contained within Exhibit P485 showed the time after which Nova's employees were lured away by ECS and the graphic evidence of Nova's plummeting income at a cross point with the sudden meteoric rise of ECS's income.

With reference to future damages, the jury heard plaintiff's evidence from Mr. Malek and the defendant's evidence from Mr. Barnard. The jury clearly did not accept Mr. Malek's testimony because the jury's future damages award of $1 million was for less than plaintiff's expert testimony. Moreover, based on legal considerations of at-will employment and other legal arguments made by ECS, the Court finds the maximum amount of future damages to be in line with Mr. Barnard's testimony of $144,260.

While ECS asserts various individual items of evidence are insufficient, the whole of the evidentiary record before the jury is greater than the sum of its parts. Accordingly, IT IS HEREBY

ORDERED that Defendant's Renewed Motion for Judgment as a Matter of Law (docket #196) is DENIED.  IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Judgment is hereby entered in favor of Nova Consulting Group, Inc. and against ECS in the amount of $1,500,000 past damages, $144,260 in future damages and $500,000.00 exemplary damages for a total of $2,144,260.00 with prejudgment interest on the past economic damages of $1,500,000 calculated at 5.07% simple interest from April 17, 2003, the date Nova filed suit, through the day preceding the date of this Judgment; post-judgment interest at the rate 5.07% per annum on the total judgment, and costs.  IT IS FURTHER ORDERED that execution shall issue for this Judgment.

It is so ORDERED.

SIGNED this 13th day of February, 2007.

FRED BIERY
UNITED STATES DISTRICT JUDGE